May it please the Court, Matthew Schwartz. I'd like to give us just a minute to let counsel clear the courtroom and to get seated. Of course. I'll begin again, Your Honor. Thank you. May it please the Court, Matthew Schwartz for the appellant Goldman Sachs & Co. The issue on this expedited appeal is whether Reno, a sophisticated party whose counsel undoubtedly negotiated the terms of its agreement with Goldman Sachs, should be held to the terms of those agreements. Namely that, quote, all actions and proceedings arising out of this broker-dealer agreement or any of the transactions contemplated hereby shall be brought in the United States District Court for the District of Nevada, close quote, and not in front of FINRA as Reno has sought to do. By its plain terms, all actions and proceedings is all-inclusive. It clearly encompasses arbitrations. The word proceedings has been used throughout the Court, throughout opinions in various courts, to clearly encompass arbitrations. It's been used by courts. Of course, the arbitration, it effectively means, then, that you're going to waive your right to arbitration because you can't bring the arbitration in Federal court. We wouldn't use the word waiver, Your Honor. What we would say is, is that they have agreed that they will not bring any claims in FINRA arbitration and that they must bring any claims in the District of Nevada. Right. Which means, then, that you can't bring an arbitration. That's correct. So they're going to waive – effectively, they're going to waive their right to arbitration. I don't know why you should dispute that, counsel. It seems pretty obvious to me. I'm not disputing that, Your Honor. I just – we wouldn't use the word waiver because I think that's slightly different from what they've done. What they have done is they've contractual – they've – in order to be able to bring an arbitration, they need to have a contractual agreement for that. What they've done is they've contracted out of it. So it's not quite a waiver issue, but I'm with you 100 percent. All actions and proceedings is an all-inclusive term. It clearly prevents Reno from bringing claims in front of an arbitration panel. This Court, the Supreme Court, FINRA itself – I find that argument quite astonishing. You mean that if you have a form selection clause in the contract, that that does away with any arbitrations? That's correct, Your Honor. If you have a specific form selection clause that says all actions and proceedings must be brought in the District of Nevada, that means you cannot bring your claims in front of FINRA. It means that if you want to bring claims – Doesn't that mean you can't bring it in New York? That's absolutely correct, Your Honor. It means you can't bring it in New York, but it also means you can't bring it in FINRA. It means you can't bring it in State court in Nevada. It means you can't bring it anywhere else except for the U.S. District Court for the District of Nevada. This is – this is a very clear term. We think that the two most recent courts to deal with exactly this form selection clause, both from the Southern District and New York, are the most thorough and the most thoughtful analyses of this particular form selection clause. It's very hard to imagine how such a broad phrase as all actions and proceedings could be any clearer that it includes FINRA proceedings as well. That word FINRA proceedings, again, used by Reno itself throughout its papers. There's also, should be no dispute here, that the claims that Reno seeks to bring in front of FINRA, breach of fiduciary duty, negligent misrepresentation, fraud, Securities Act violations, that these are all claims that arose out of the broker-dealer agreements or the transactions contemplated thereby. Reno quotes various recitals in its papers, but it leaves out one of the recitals that shows that the broker-dealer agreement clearly contemplated the issuance of the auction rate securities upon which Reno bases its claim. The recital says, quote, There's also a merger clause within the broker-dealer agreement that specifically refers to the earlier underwriter agreement, earlier within a week or so, underwriter agreement, which Reno now claims is the basis for its claims in front of FINRA. Again, we think that the two most recent cases lay this out very clearly. Reno is very desperate to get out of its contractual obligation to bring its claims  that if it brings its claims there, those claims will be tossed at the outset of the case under the statute of limitations. It does not deny that in its papers. It seeks to go in front of FINRA because the FINRA procedures for statute of limitations are a little bit murkier, and it's not as clear that things can get tossed out earlier on or, if ever, in front of FINRA. That's why it's important that Reno be held to its contractual obligations. Reno, however, has come up with what the Southern District has recently called sophistry and linguistic tricks to try to get out of its clear obligations under the contracts. It makes several arguments. The first argument that it makes is that unless a form selection clause uses the word arbitration specifically, it cannot supersede a prior agreement to arbitrate, and we'll assume for the sake of this particular argument that there was a prior agreement to arbitrate under FINRA 12200. There is no basis in the law for saying that a form selection clause needs to specifically use the word arbitrate. When you look at form selection clauses in contracts, you apply basic standards of contract interpretation. You simply look at the plain language and see if it's sufficient. Judge Battaglia actually had a case last year, Lizaldi v. Advanced Planning Services, 875 F. Sup. 2d. 1150, where he had several form selection clauses, the last of which said that all the claimant, all disputes, needed to be brought in court in the San Diego area. And there was an earlier form selection clause which specified arbitration. And Your Honor had no problem saying that the last of these form selection clauses, which demanded that the cases be litigated in court, superseded the earlier of the form selection clauses, which mandated arbitration, even though the last of these form selection clauses didn't use the word arbitration. It really shouldn't have to cross anyone's mind that when you have something like all disputes or all actions and proceedings, that that is sufficiently clear. As Judge Lynch, who is now on the Second Circuit but on the Southern District at the time, explained, quote, "...although a form selection clause does not explicitly use the word arbitration, it need not do so if its plain and unambiguous terms nevertheless specifically preclude the disputed arbitration." And that's from the Spansky Enterprises case. Now, Reno now tries to argue that all actions and proceedings is not actually clear enough to encompass FINRA arbitration proceedings. And to do so, Reno relies primarily on the Fourth Circuit's opinion in the Carillon Clinic case. I think that the Southern District's opinion in the Golden Empire case goes through that Fourth Circuit opinion and really picks it apart and dissects it and shows why it's wrong. But I'd like to go through some of the basic arguments, because those are the arguments that Reno pushes here on this appeal, as for why this Court should affirm the district court below. First of all, the Carillon Clinic case did not do a basic review of what the words all actions and proceedings means. It didn't look at the Supreme Court use of that word, the Ninth Circuit, the New York State courts, Reno itself, or FINRA. What the Fourth Circuit did is it looked to the technical provisions of the New York CPLR, where it talked about actions and special proceedings in terms of whether or not courts expedite certain types of matters before, and it imported the definition of special proceedings, which under that narrow CPLR provision does not include arbitration, and it superimposed it onto a very plain English all actions and proceedings form selection clause. That was clearly wrong. As the Southern District observed, quote, the form selection clause makes no mention of the New York CPLR and suggests no limitation. The Fourth Circuit also looked to a portion later in the form selection clause where there was a waiver of a right to trial by jury, and the Fourth Circuit said, well, if there's a waiver of right to trial by jury, then it must mean that this form selection clause is only talking about court actions. That's clearly erroneous for two reasons. First of all, you would put in a jury waiver just in case you actually had a court case and you would want to waive it. But second of all, there's no doubt that if one of the parties here, either Goldman Sachs or Reno, brought a court case, let's say, in the Southern District of Florida, seeking only equitable relief and so there would be no jury involved, that that court case in the Southern District of Florida would clearly be governed by the form selection clause and would have had to have been brought in the District of Nevada. The final argument that the Fourth Circuit really harped on, and I think Reno put sort of all of its eggs in this basket, is the idea that if you said all actions and arbitrations must be brought in the District of Nevada, that that wouldn't make sense, the Fourth Circuit says, because you cannot bring an arbitration in the District of Nevada. And I think the Southern District in Golden Empire explained why this is sophistry very well. It said that goes back to the original question I asked your counsel, which is, isn't this effectively a waiver of arbitration? I think the answer has to be yes. That's correct, Your Honor. And that's why the Southern District of New York in Golden Empire thinks that the Fourth Circuit is wrong on that point. That's absolutely correct, Your Honor. And just to sort of, you know, go through sort of the linguistic trick that the Fourth Circuit did here, the Golden Empire Court explained, quote, "...an analogous substitution of actions in the Supreme Court of New York would be equally illogical, since actions in the Supreme Court of New York cannot be brought in the Southern District of New York. Nevertheless, it can hardly be argued that a case brought in the Supreme Court of New York would fall outside the heading of actions and proceedings." In other words, Your Honor, if you adopt this view that you cannot take the word arbitration and substitute it for proceedings, you are rendering the entire form selection clause effectively moot, null and void, because the only thing that would ever make sense would be all actions and proceedings brought in the District Court of Nevada shall be brought in the District Court of Nevada. And that's obviously ridiculous. The parties wouldn't be able to do that. Basic rules of contract interpretation means that the parties don't put in clauses that they intend to have no effect whatsoever. I'd like to address a little bit this issue of the presumption of arbitration. I think that Rinos-Brees gets the issue precisely wrong. When you talk about the presumption of arbitration, you say when there is a validly agreed-to arbitration clause, you presume that the scope of that clause is broad where there is doubt. That is very different from presuming, as the issue is here, that there is a validly agreed-to arbitrary – there's a valid agreement to arbitrate in the first place. And there are a lot of Supreme Court cases over the years. The Granite Rock is the most recent of this. And the Second Circuit actually had a chance to apply the Granite Rock case in almost an identical situation to the one we had here. They had an earlier-form selection clause requiring arbitration. They had a second-form selection clause saying any dispute shall be brought in court. The district court below, as the district court did here, applied the presumption and said the earlier arbitration agreement is still valid, it still exists, and you have to go to arbitration. And the Second Circuit reversed. And it went out of its way to reverse specifically on the presumption issue. It said, ''Even assuming, as the district court found, that the provisions in the two agreements could reasonably be read as complementary, we conclude that the district court erred in applying the presumption of arbitration. While doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made,'' citing the Granite Rock case. I think I would be remiss if I didn't say before rebuttal that an example of how far awry the district court went here on this opinion is that it went through various issues on this opinion, did a lot of analysis, most of it wrong, including non-analyzing the text of the actual forced selection clause. And then when it came finally time to its holding, it said, ''But none of what I've said before matters, because the issue about whether or not this case should be arbitrated is one for FINRA to decide.'' And in doing so, it cited FINRA Rule 12203, which simply says that FINRA has the discretion not to take certain hearings if they are inappropriate or not to take certain hearings if they think that there's some sort of safety risk to the arbitrators. There is no court in this country that has ever before ruled that FINRA 12203 is a clear and unmistakable delegation by the parties to FINRA to resolve arbitration. And that is the standard that this circuit has set forward and that the Supreme Court recently has set forward, too. So Reno confesses that the district court error there. It said that that error didn't make any difference, but in fact that error was the actual holding of the case below. That would be an easy basis for reversal, but that would simply remand it to the district court. We have an expedited appeal here because the FINRA arbitration is going on right now. Every day that it goes on constitutes irreparable harm to Goldman Sachs in defending against it. And so we would urge Your Honors, full reversal on the basic premise that all actions and proceedings clearly encompasses the FINRA arbitration that Reno is trying to bring right now. And we would urge Your Honors to look at the Golden Empire and the North Carolina cases as the most persuasive cases on this issue. Yes, Your Honor. Which was the – did you say that the Golden Empire case was Judge Lynch's case? No, Your Honor. Judge Sullivan was Golden Empire. Judge Lynch issued the Spansky decision. Spansky, okay. With that, I'll reserve the balance of my time. Thank you. Mr. Swanson. Good morning, Your Honor. Jim Swanson on behalf of the City of Reno. I think the best place to start here are the rules of construction that are rules of construction applicable in the Second, Fourth and Fifth Circuits in this case. The two rules I think that are important to consider here is when you're considering two agreements that relate to the same subject matter, number one, that you should work to harmonize the two agreements if that is possible. And the second rule of construction is that if you're going to waive arbitration, the waiver has to be specific. And that means either that there is a specific express preclusion or there is at least a positive assurance of a direct conflict between the two agreements. So if you – and that's the law in the Second Circuit, it's the law in the Fourth Circuit in the Motorola case. There is no circuit that has any law that is contrary to that. So let's apply that to this case. You have two agreements here. The first agreement is an agreement that was formed by the operation of FINRA Rule 12-200, and that says that a customer can demand arbitration of any dispute that relates to the business activities of a member. And there wasn't a lot of oral argument on that, but that is one of the issues that is up here on appeal, and every court that's looked at it has agreed with us that the City of Reno would be a customer under these circumstances. That's because, number one, the City of Reno was given structuring advice and underwriting services by Goldman Sachs, and that involved a variety of different things that are set forth in our Statement of Claim. And secondly, because there is an auction agreement, the broker-dealer agreement, that is in place whereby Goldman Sachs is paid 25 basis points a year to conduct auctions on an ongoing basis for the City of Reno's auction rate securities. And that, I think, clearly establishes that the City of Reno is a customer. So that's agreement number one. The second agreement that we're talking about is this broker-dealer agreement. The broker-dealer agreement is between the City of Reno, the auction agent, and Goldman Sachs, and it's Goldman's contention that that agreement supersedes the agreement that was formed by virtue of the FINRA rules. Now, there's a lot of case law that has developed over time under similar circumstances. The very first thing that the courts say is you should look to see whether there's an express waiver. If there is an express waiver of arbitration, obviously that is enforceable. Here, there is no express waiver. And I think what's somewhat interesting about the way this agreement is written is that there is an express waiver of a jury trial right in the heading of the provision that we're talking about here. But there is no mention of arbitration. There is no express waiver of arbitration. There's no word that leads you to conclude that there is anything to do with an arbitration. And that's what the Carilion Court, one of the things they noted, is that no reader would look at this and say, well, I'm waiving my right to arbitrate under the FINRA rules. It looks like you've got some questions. Roberts. If you have a waiver of a jury trial, why would you even need that if you had, if you had, if you had agreed to arbitrate? That certainly would be surplusage, wouldn't it, if you had agreed to arbitrate? Well, certainly you don't have a jury trial in arbitration. That was one of the points that the Carilion Court made, and that's one of the reasons they concluded. But the fact that you've waived, that you've, that you've put in there, specifically in there, that we agree to waive a jury trial contemplates that the parties may go someplace other than arbitration. Of course. And there's a good reason for that. That is because under the FINRA rules, it is only the customer who can demand arbitration. And the customer isn't required to arbitrate. He just has the right to arbitrate. So there are certain instances where Reno could litigate if they wanted, and Goldman Sachs always has to litigate. So there is there is. If it's topside, if it's a plaintiff. If they're the plaintiff, that's correct. They don't have the right to demand arbitration. So there's no express waiver of arbitration. And then the second point here is that in the cases in which a waiver has been found where there's no express waiver, like Applied Energetics and Byremas, which are both cases out of the Second Circuit, Byremas, a district court opinion, Applied Energetics, a Second Circuit opinion, you have two agreements that say any dispute in them. So you have an initial agreement that says any dispute shall be resolved by arbitration. And then you have a second agreement that says any dispute shall be resolved by litigation. And when you have that, you have the positive assurance, you have a direct conflict between the two agreements, and so they cannot be harmonized. So although you would try to harmonize, you can't harmonize in that situation, and that was the holding of the Applied Energetics case. Here, what you end up having is an agreement that says any dispute shall be arbitrated. That's the FINRA rule, at least as it respects the City of Reno and when they want to do so. And you have an agreement that says all actions and proceedings shall be brought in the District of Nevada. So the question that Your Honors have to think about is what does actions and proceedings mean in the context of this case? If it could be said that actions and proceedings means arbitrations, then you'd have the direct contract, conflict between the two, and you'd have a positive assurance, and under those circumstances, there could be a waiver of arbitration. That is not what the Fourth Circuit has said, and that's not what the Fifth Circuit has said when confronted with this situation. They say actions and proceedings is on its face an ambiguous term, and that in the context of these agreements, that actions and proceedings mean court proceedings. And they say that because the Carilion Court says that in this context, actions and proceedings is a term of art under New York and Federal law, and that under New York statutory procedural law, actions and proceedings mean only court proceedings, not arbitration proceedings. And I think it's important to note that this particular provision cites a provision of New York statutory law. So that suggests that New York statutory law is a good place to look for that. Breyer, the New York courts didn't buy that, though. No, the New York court did not buy that. The New York court came down squarely on Goldman Sachs on this. Is the Golden Empire case on appeal? Yes. Has it been argued? No. It's been – we have filed our initial brief. I'm not sure whether they have filed it. Scheduled for argument? Not yet. I think it's probably going to be after the beginning of the year. Okay. So you think they're about 4 months out from oral argument in that case? I defer to Mr. Schwartz, who's probably more familiar with the Second Circuit, but my experience with the Second Circuit would suggest it's after the beginning of the year. But the Spansky case was never appealed. The which case? Spansky. Yes, that's right. So the – and then I think the Carilion court says that when you look at the context of the agreement itself and its discussion of the waiver of jury trials, that the context of this provision itself suggests that the meaning of actions and proceedings means court proceedings. And then the final thing the Carilion court said is, if you substitute the word arbitration in for actions and proceedings, the provision doesn't amount to a waiver, because it doesn't make any sense as a waiver. I don't understand that. I don't understand that argument by the Fourth Circuit. That doesn't make any sense to me. Well, I think what they're saying is that actions and proceedings could mean one of two things. It could mean court proceedings or it could mean arbitration. So to make an attempt to make – to figure out which it does, let's put arbitration in instead of court – instead of court proceeding and see what happens. Yes. But you couldn't say all arbitration shall be filed in district court. That is nonsensical. But if – that's why I asked – that's why I asked Mr. Schwartz whether this – whether the Forum Selection Clause wasn't effectively a waiver of a right of arbitration. It just tells you that all actions and proceedings have to be filed in district court, which limits the actions and proceedings that you're able to bring. It means you cannot bring an arbitration, because arbitrations cannot be brought in Federal court. Right. I think that's what – that's what it would have to be. It would – it certainly isn't a specific waiver of arbitration, because as Carillion Court points out, there's no mention of the word arbitration there. It would have to be an implicit waiver. Yeah. It's – it's, you know, it's sort of analogous to field preemption as opposed to express preemption. And you've made the – you've made the express argument and made it very well. But the Forum Selection Clause could be seen as a sort of field preemption by saying all actions and proceedings are going to be filed in district court in Nevada. And if that means that you can't bring something that you might – might have attempted to bring otherwise, namely an arbitration in Nevada, then it can't be brought. And it could be under applied energetics if there's a direct conflict between the prior agreement and this agreement. In other words, the field preemption of the second agreement, then you would have the kind of positive assurance that would – that would amount to a waiver of arbitration. Here, I think the answer to the question, though, is actions and proceedings might mean arbitrations and it might not mean arbitrations. It's on – it's on its face it's ambiguous. And the rules of construction say in that situation you have to harmonize the two agreements in favor of arbitration, and that's what should be done. That's what the Carillion Court gave. If it was an action to compel arbitration, then you would say you would have to bring it in Nevada. That's correct. That's right. If it was an – or if it was an action to enforce an arbitration award, it would have to be brought in the district of Nevada. So you can harmonize. It all makes perfect sense when you – when you think about it. The – with respect to the City of Reno, they have the option to arbitrate. They don't have to. If they litigate, it has to be in the district of Nevada. Goldman Sachs always has to litigate in the district of Nevada. And when you're compelling arbitration or you are enforcing an arbitration award, then – then it has to be brought in the district of Nevada. The final thing I would say is that – and this gets to the question of actions and proceedings – is that under – and we cite these and they're in the record excerpts – that under both FINRA rules and SEC guidance, Goldman Sachs, it would be – it's prohibited for them to waive arbitration in – in a customer agreement. And this broker-dealer agreement would be a customer agreement. And I would cite your – your honors to Record Excerpt ER, Volume 3, 70 and 71. And the SEC releases in ER Volume 3 at page 82. It's a longer document, but the waiver is at page 82. I'm sorry. Would you go back over that point? You're saying that Goldman Sachs is prohibited from waiving? They're prohibited under the FINRA rules and under SEC guidance from waiving arbitration in an agreement, in a customer agreement. You mean that – well, it's not their option. You mean they're prohibited from – from asking the customer to waive arbitration? That's correct. And they're not allowed to include a provision in their customer agreement that would amount to a waiver of the customer's right to arbitrate. That FINRA doesn't allow that. Well, why – why isn't your argument that that's just – that just directly operates to limit the form selection clause? Well, I don't know that it would constitute necessarily something that would be included in our contractual relations with Goldman Sachs. But it is a – it is a background point that I think suggests that the context here indicates that nobody on either side intended this to be a waiver of arbitration. Because such a waiver is prohibited under the FINRA rules. The – there are two other points that I'll just briefly touch upon. The first is this argument that the – that the broker-dealer agreement would – given – if you assume that there is a waiver implicit in there, does it apply to all the claims that were raised in the statement of claim? And the answer to that is that many of the claims in the statement of claim are specifically related to the underwriting process, and they are not governed by the broker-dealer agreement. The language in the broker-dealer agreement says that disputes that are arising under the broker-dealer agreement or transactions contemplated thereby or hear of are included. But the term contemplate in this context – contemplate has two basic meanings. One is to think about something really hard, and that is not the meaning here – used here. Or something that you expect to happen in the future. And the things that were expected to happen in the future were the auctions under the broker-dealer agreement. They were not the transactions, the bond purchase agreement that had already occurred at the time the broker-dealer agreement was signed. So it would be our contention that the scope of the broker-dealer agreement is – does not cover everything that's in the arbitration. It would cover some of the things in the arbitration. And I think that was a point that the district court was making when they said that would be an issue that would be left to the arbitration panel, the question of the scope of how broad that waiver would be if there was, in fact, a waiver. The final point that I wanted to touch upon is this customer point. And I think all that really needs to be said about that is that under anybody's definition of customer, Goldman Sachs – City of Reno is Goldman Sachs' customer, and that every court that has addressed this, which includes the Second Circuit in the UBS West Virginia case, the Carillion case, and district courts in Minnesota, Nevada, California, and Virginia, I believe, have all reached that same conclusion. So thank you, Your Honors, for your attention, and I suspect that you should, at the end of this, affirm the district court's opinion. Thank you. Thank you, Mr. Swanson. Mr. Schwartz. Thank you, Your Honor. First, Judge Biby, in answer to your question, I agree with Mr. Swanson. I think the Second Circuit will probably hear oral argument on this case early 2014. There are a few points that Mr. Swanson raised that I want to address. The first is he snuck in there this argument that the FINRA rules preclude Goldman Sachs from entering into a contract with Reno that would have the effect of Reno not being able to arbitrate. The reason I think that that drew some blank looks from Your Honors is that that argument is not before this Court on Appeal. Goldman Sachs disagrees with that argument. It has not been briefed and it was not raised to the district court below. The second point is that Mr. Swanson kept saying, without much basis for it, that actions and proceedings is an ambiguous term. It is very difficult to imagine a term other than all actions and proceedings and consistently that word all has been left out of the description, that does not you know, that all actions and proceedings does not include arbitration, which is constantly referred to by courts, by FINRA, by Reno itself as a proceeding. This is a clear and explicit waiver of the ability to do anything else besides bring your claims in the District of Nevada. You cannot bring your claims in front of FINRA. That is a proceeding, and if you want to bring those claims, they must be brought in the District of Nevada. Mr. Swanson doesn't address any of the Golden Empire rebuttals to the Fourth Circuit's opinion in Carillion. But what he does suggest is something that would do extreme violence to the language of this Form Selection Clause. He suggests, for example, that maybe the Form Selection Clause only means all judicial actions and judicial proceedings. But that's not what the Form Selection Clause says. What the Form Selection Clause says is all actions or proceedings. Mr. Swanson also suggests that, well, maybe this only applies for when Goldman Sachs brings actions and proceedings. That's also not what the Form Selection Clause says. The Form Selection Clause does not say all actions and proceedings brought by Goldman Sachs in the District Court of Nevada. What this Form Selection Clause clearly says is that all actions and proceedings, period, must be brought in the District Court of Nevada. Sotomayor, do the recent Supreme Court decisions on preemption and waivers of class action and other things like that, the Concepcion case, does that, do those decisions have, does that decision have any bearing on this at all? I don't think so, Your Honor. At least, I didn't think so until Mr. Swanson brought up this idea that you weren't allowed to contract out of your right to bring arbitrations under Fenron rules. But other than that, I don't think either Concepcion or the more recent case this term dealing with who decides arbitration does affect this case. In closing, Your Honors, what we would urge the Court to do is to look at the Golden Empire case. We think it makes completely clear that there is no way around the fact that all actions and proceedings includes arbitrations. To do so is what the southern district, two different southern district courts called sophistry and linguistic tricks, that this is being done after the fact, by legal arguments, in order to avoid bringing claims in district court in Nevada where Reno knows, as counsel has admitted in other issuer cases, that it stands a very slim chance of surviving the statute of limitations. From Goldman Sachs's perspective, we're very confident it would be dismissed early on. And what they're simply doing is trying to escape what could not be clearer. All actions and proceedings. The only thin reed that counsel for the other side has on this issue is that that is somehow materially different than all disputes. It is hard to imagine a more inclusive phrase than all actions and proceedings. Is the record clear here that this was a negotiated contract, Armstrong? Your Honor, this must have been a negotiated contract because it specifies the district of Nevada. Goldman Sachs would not have done that. Well, I'm wondering, apart from that one. The record is clear that Reno was represented by both the financial advisor and the law firm of Swenson at Stern throughout the contracts and throughout the transactions. So this is not an example of a small town not knowing what it's doing. They were fully represented throughout this entire process. Reno is obviously a big city. It had experienced counsel. Well, relatively, as America goes, it had experienced counsel. It negotiated for the district of Nevada as opposed to the southern district of New York, where Goldman Sachs is headquartered. So there's really no doubt that this was a, you know, a validly formed form selection clause. Thank you very much. Thank you. We thank both counsel for the excellent briefing and argument in this case. Goldman Sachs v. City of Reno is ordered and submitted. And the last case on the oral argument calendar is Mendoza-Mendina v. Holder.
judges: Battaglia, Schroeder, Bybee